UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ROBERT THOMAS FAUNCE,

        Plaintiff,

    v.

DR. PAULSON; N.P. AMY MANN; DR.
DEGNER (RETIRED); R.N. KAREN
IRELAND; R.N. C. PRIES; NURSE MGR. C.
COFFEE; and GRIEVANCE COORDINATOR
A. KIDWELL,

        Defendants.

Case No. 6:17-cv-01470-YY

OPINION AND ORDER

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff, Robert Faunce ("Faunce"), is a prisoner incarcerated at Oregon State Penitentiary ("OSP") in Salem, Oregon. Faunce has chronic obstructive pulmonary disease ("COPD") in the form of emphysema, as well as a heart condition that causes symptoms of high blood pressure and dysrhythmia. Faunce has been in a years-long dispute with OSP medical staff over the medications used to treat these conditions. He has variously asserted that the medications he is prescribed do not work or have dangerous side effects, has sought to use nitroglycerin on a more regular basis, and challenges the restrictions placed on rescue inhalers.

Faunce filed this action on September 18, 2017, alleging claims against the OSP grievance coordinator, Adam Kidwell ("Kidwell"), and six OSP medical providers, including two doctors (Dr. Paulson and Dr. Degner), a nurse practitioner (Amy Mann ("Mann")), a nurse manager (C. Coffee), and two registered nurses (Karen Ireland ("Ireland") and Christina Pries ("Pries")). Faunce claims that his rights under the Eighth Amendment to the United States Constitution were violated when: (1) Drs. Degner and Paulson, Mann, and Ireland took "strict control over medical inhalers," cut back on medication controlling his COPD, and refused to let him see an outside cardio-pulmonary specialist (Claim One); (2) Dr. Paulson and Mann denied him adequate treatment of a cataract in his left eye causing him to lose his eyesight in that eye (Claim Two); and (3) OSP infirmary staff refused to let him obtain care by medical providers with the Veterans Administration (Claim Three). Complaint, ECF #2.

This court has jurisdiction over Faunce's claims under 28 USC § 1331 and 42 USC § 1983. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). ECF #24. Defendants have filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF #39), contending that the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 USC § 1997e(a), mandates dismissal of Faunce's claims. On February 13, 2018, this court advised Faunce of the standards governing disposition of summary judgment motions. ECF #42. Faunce filed a Response to defendants' motion (ECF #46) and, pursuant to previous orders in this case, this court has also considered his various prior submissions insofar as they are relevant to the pending motion. *See* ECF #22, #27 (ruling on ECF #26), #32 (ruling on ECF #28), and ECF #48 (ruling on ECF ##34, 36, and 37).

For the reasons that follow, defendants' motion is granted and judgment will be entered in favor of defendants.

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party must establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citations omitted).

**DISCUSSION**

I.  **Undisputed Material Facts**

   A.  **Faunce's Medical Conditions and Treatment**

Faunce was admitted to the custody of the Oregon Department of Corrections ("ODOC") on October 6, 2009, is housed at OSP, and is incarcerated for life. Decl. Adam Kidwell ("Kidwell Decl.") ¶ 3, ECF #41. He suffers from various medical conditions including emphysema and a heart condition and, among other things, treats his symptoms with the use of nebulizers, oxygen, and inhalers, the latter of which he alleges came under the "strict control" of OSP infirmary staff in in 2013. Complaint 4, ECF #2.

///

///

B.     OSP Grievance Procedures

Inmate grievances at OSP are processed under the ODOC *Inmate and Grievance Review System*, found in Oregon Administrative Rules at Chapter 291, Division 109. Kidwell Decl. ¶ 6, ECF #41. Inmates are encouraged to informally communicate with line staff as the primary means of resolving disputes. OAR 291-109-0100(3)(1). However, when disputes are not resolved informally, ODOC permits and encourages "inmates to seek resolution of issues or disputes using the department's internal inmate grievance review and appeal system." OAR 291-109-0100(3)(b).

Upon admission to an ODOC facility, inmates are informed of the grievance process during inmate orientation, and are given an Orientation Information Packet when they first arrive at the facility. Kidwell Decl. ¶ 8, ECF #41. Information on the grievance process is in the inmate handbook and inmates can ask any housing unit officer for a grievance form. *Id*.

Among other items, ODOC inmates may grieve: (1) the misapplication or lack of any administrative directive or operational procedure; (2) any unprofessional behavior or action directed toward an inmate by ODOC staff; and (3) any oversight or error affecting the inmate. OAR 291-109-0140(2). *Id.* ¶ 9. Inmates may not grieve certain issues, including: (1) claims or issues for which the inmate has filed a tort claims notice with the Oregon Department of Administrative Services, Risk Management Division; and (2) claims or issues an inmate has pursued or is pursuing in pending litigation in state or federal court. OAR 291-109-0140(3); Kidwell Decl. ¶ 10, ECF #41.

To obtain grievance review, the inmate's grievance must generally be submitted within thirty (30) calendar days of the date of the incident giving rise to the grievance. OAR 291-109-0150(2); Kidwell Decl. ¶ 11, ECF #41. Grievance forms must be signed by the inmate, are date

stamped and logged by the grievance coordinator upon receipt, and a grievance receipt is provided to the inmate. OAR 291-109-0150(3)-(4); OAR 291-109-0160(1).

Grievances may be returned to the inmate by the grievance coordinator if they do not comply with ODOC grievance procedures. Such returned grievances must include an explanation and cannot be appealed, but the inmate may elect to resubmit to the grievance to the grievance coordinator within 14 calendar days from the date the grievance was sent back to the inmate. OAR 291-109-0160(5).

If a grievance is not returned to the inmate, the grievance coordinator must generally respond to the grievance within 45 days from receipt of the grievance. OAR 291-109-0160(2). If an inmate is dissatisfied with the initial response to an accepted grievance, the inmate may appeal the denial in a two-level system of review. Kidwell Decl. ¶ 14, ECF #41. The first level of appeal is referred to a functional unit manager and must be received within 14 days of the initial response by the grievance coordinator. OAR 291-109-0170(1)(b); Kidwell Decl. ¶ 16, ECF #41. The scope of the original grievance cannot be expanded, and no additional information may be submitted, unless the information was unavailable at the time the original grievance was filed and the information is directly related to the issue being grieved. OAR 291-109-0170(1)(a)(A). The functional unit manager must respond to the appeal within 30 calendar days from the date the functional unit manager receives it. OAR 291-109-0170(1)(d).

The second and final level of appeal is to the assistant director having authority to resolve the issue. OAR 291-109-0170(2); Kidwell Decl. ¶ 17, ECF #41. The second-level appeal must be received by the grievance coordinator within 14 days after the grievance coordinator sends the first grievance appeal response to the inmate. OAR 291-109-0170(2)(c). Second-level appeals

filed past the due date may be permitted if the inmate demonstrates why the grievance appeal could not be timely filed, e.g. physical incapacity. OAR 291-109-0170(2)(c)(A).

C. **Grievances Pursued by Faunce at OSP**

Since his admission to ODOC in 2009, Faunce has filed nine grievances, all while housed at OSP. Kidwell Decl. ¶ 18, Ex. 2, ECF #41. Several of those grievances related to Faunce's medical care. *Id.*

On June 6, 2014, Faunce submitted Grievance OSP_2014_06_027, stating that he had ongoing issues with infirmary staff (Mann) regarding his heart medication. *Id.* ¶ 19, Ex. 3. On July 3, 2014, OSP Health Services Nurse Manager C. Jenson responded, advising that Faunce's medical care was medically sound and that his request to control his blood pressure with nitroglycerine was inappropriate and could be very detrimental to his health. Faunce did not file an appeal of the grievance response.

On September 10, 2015, Faunce submitted Grievance 2015_09_022, complaining that nurses on the day and evening shifts had removed inhalers from the evening medical cart. *Id.* ¶¶ 20-22, Ex. 4. He asserted that Mann made inmates wait long periods of time to see her, gave false information to inmates regarding their physical health conditions, lied to inmates regarding the medications they should take, and deprived him of the medication he needed. In response to what action he was requesting, Faunce explained that his "P.T.S.D. kicked in," and asked for a Ruger 44 Black Hawk to "handle the situation." The grievance coordinator returned the grievance to Faunce because it did not comply with three grievance rules, including that inmates must communicate with staff in a respectful tone and manner, and that only one matter and one ODOC employee could be grieved in a single grievance. *Id.*, Ex. 4 at 4.

Faunce resubmitted Grievance OSP_2015_09_022 on September 15, 2015, noting that his inhalers had not been transferred to the evening medical cart. Faunce reportedly went to the infirmary to get an inhaler, but was "denied medical attention." He accused unnamed medical staff of "conspiracy to commit murder." *Id*., Ex. 4 at 3. That grievance was again returned to Faunce, with a memorandum explaining it violated ODOC grievance rules for the same three reasons. Faunce did not resubmit the grievance a third time.

On May 11, 2017, Faunce filed Grievance OSP_2017_05-054 regarding the care and medication that Mann was providing. *Id.* ¶ 23, Ex. 5. He complained that his COPD was getting worse and that Mann was continuing to deny in-cell inhalers, an oxygen machine, and nebulizers to alleviate stress on his heart. He stated that he was no longer able to take showers three times a week, but was instead relegated to "bird baths" in his cell. He suggested that Mann should be fired due to her lack of knowledge in diagnosing and understanding the cardiovascular and cardiopulmonary systems. *Id*., Ex. 5 at 2-7. In a grievance response dated June 6, 2017, Pries advised Faunce that his medical needs were being addressed appropriately. *Id.*, Ex. 5 at 1. Faunce did not appeal this grievance response.

On May 22, 2017, Faunce submitted Grievance OSP_2017_05_091 as a "Continuance" of his last grievance. *Id.* ¶ 24, Ex. 6. He enclosed "the infirmary response" to his request "concerning [his] blind eye" and explained that he was "having a bronchial emphysema attack." *Id*., Ex. 6 at 2. Grievance OSP_2017_05_091 was returned to Faunce on June 7, 2017, with an explanation that his effort to expand Grievance OSP_2017_05_054 was not permitted and that no further information could be added to the accepted grievance (Grievance OSP_2017_05_054). Faunce did not subsequently submit these complaints in a separate grievance.

Finally, on August 8, 2017, Faunce submitted Grievance OSP_2017_08_039. *Id*. ¶¶ 25-28, Ex. 7. Faunce complained that he missed a medical appointment due to the refusal of an OSP officer (Sgt. Redding) to let him out of his cell until 30 minutes after the appointment time and the refusal of Dr. Paulson to see him when he arrived late. To solve the grievance, Faunce requested the "same actions we took out in the jungles of Vietnam to [e]nsure that such incidents like this didn't occur again." *Id*., Ex. 7 at 7. On August 9, 2017, Grievance OSP_2017_08_039 was returned to Faunce due to non-compliance with DOC Rule #109 because it grieved "multiple staff." *Id*., Ex. 7 at 6.

On August 10, 2017, Faunce resubmitted Grievance OSP_2017_08_039. *Id*., Ex. 7 at 4. He again recounted why he was late to his appointment and questioned whether any action could be taken to resolve the problem since the infirmary and pharmacy are "controlled by one of the local Cosa Nostra crime families." *Id*. His grievance was returned because it was "unclear" what he was grieving. *Id*., Ex. 7 at 3. Faunce was also advised to "[r]efrain from implicating using violence to resolve or address any issue," such as his statement, "Give me the guns and ammo I request and I will stop this nonsense real quick." *Id*.

That same date, Faunce apparently completed a "Non-Emergency Health Care Request," comparing the "moral standards" of OSP medical staff to those in charge at Third Reich death camps and the Tiananmen Square and My Lai Massacres. ECF #45 at 3.[1] He cited his inability to take med showers due to the lack of in-cell inhalers, invited medical personnel to come down to his cell to verify that he could not shower, and claimed he was being denied prescription refills for medications to treat his COPD emphysema. *Id*.

---

[1] ECF #45 is titled as a "Motion to Introduce Evidence on Failure to Comply with Grievance Form Rule #109." On March 13, 2018, this court granted the motion and agreed to consider the evidence submitted by Faunce with that motion. References to the motion will be to ECF #45.

8 – OPINION AND ORDER

On August 11, 2017, Faunce filed a Grievance Appeal Form regarding Grievance OSP_2017_08_039, noting that "this is the only appeal I will file. A tort claim is pending." Kidwell Decl., Ex. 7 at 2.

### D. Faunce's Tort Claims Notice

On an undisclosed date, but presumably on or before August 11, 2017, when he notified OSP staff that a "tort claim is pending," Faunce filed a Tort Claim Notice with the Oregon Department of Administrative Services Risk Management, seeking to get the restrictions lifted on his nebulizer, oxygen machine, and in-cell inhalers, and complaining that he was being denied access to a cardio-pulmonary specialist. ECF #45 at 10-11. On August 15, 2017, Faunce sent an "update" to his Tort Claim Notice, advising that refills for inhalers had gone from 25 days to 60 days. *Id.* at 12-13. On September 1, 2017, the Inmate Claims Unit denied Faunce's claim and closed Tort Claim No. L162679, stating that the "Department of Corrections management level investigation concluded that while an event you described may have occurred, no compensable loss or injury resulted." *Id*. at 9.

## II. Exhaustion

### A. Legal Standard

"The PLRA requires a prisoner to exhaust 'available administrative remedies' before bringing an action with respect to prison conditions." *Williams v. Paramo*, 775 F.3d 1182, 1190-91 (9th Cir. 2015) (citations omitted). Exhaustion of available remedies is mandatory and, under the statutory scheme of the PLRA, it is of no moment whether the remedies meet federal standards, or whether they are "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The purpose of the PLRA's mandatory exhaustion requirement is twofold. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, exhaustion protects agency authority by discouraging prisoners from disregarding agency procedures and giving agencies a chance to correct their own mistakes before a lawsuit is filed. *Id*. Second, exhaustion promotes efficiency given that claims can often be resolved more economically—often through settlement—prior to a lawsuit. *Id*.

"To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*) (quotations and citations omitted). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). However, "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Id*. (footnote and citations omitted).

A motion under FRCP 56 is the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA. *Albino*, 747 F.3d at 1168. A defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. *Id*. at 1172. Courts will look to the applicable regulations explaining the scope of the administrative review process, testimonial evidence from prison officials who administer the process, and whether prisoners were apprised of the grievance system. *Id*. at 1175; *see also Brown*, 422 F.3d at 937. If the defendant carries its initial burden, the burden of production "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citation omitted).

Whether a remedy is "effectively unavailable" may involve proof that the remedy is "'ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id*. (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). However, the ultimate burden of proof remains with the defendant. *Id*.

### B. Available Administrative Remedy and Exhaustion

Defendants have established their initial burden of proving that Faunce had access to an available administrative remedy to pursue the issues he raises in this lawsuit. When inmates arrive at OSP, they are informed that they may file a grievance to resolve their disputes. Kidwell Decl. ¶ 8, ECF #41. They are informed of the grievance process through an Inmate Orientation and an Orientation Information Packet. *Id*. The inmate handbook explains the grievance process, and inmates may obtain a grievance form from any housing unit officer. *Id*. The Oregon Administrative Rules allow inmates to grieve a number of things, including the misapplication or lack of an administrative directive or operational procedure, unprofessional behavior or actions directed at the inmate by ODOC staff, and any oversight or error affecting an inmate. OAR 291-109-0140(2).

Through regulations, testimonial evidence, and information provided to prisoners, defendants have established that there was an available administrative remedy. *See Brown*, 422 F.3d at 937. Faunce does not dispute that he was aware of the grievance system and knew how to obtain a form. Moreover, unlike the plaintiff in *Albino*, Faunce repeatedly used the grievance procedure. *See Alexander v. Los Angeles Cty. Jail Sheriff*, 2014 WL 8392313, at *7-8, n.8 (C.D. Cal. Aug. 15, 2014) (finding that defendants carried their initial burden where declaration established that jail had an inmate complaint policy, complaint forms were openly available, and "plaintiff actually utilized the grievance procedure").

Defendants also have made an initial showing that Faunce did not exhaust his administrative remedies. Although Faunce submitted multiple grievances complaining about various aspects of his medical care, he never pursued any of his grievances through all the steps of the ODOC grievance process. Faunce did resubmit some grievances that were returned to him unprocessed on procedural grounds. However, he never submitted appeals on his two accepted grievances (OSP_2014_06_027 and OSP_2017_05_054) and did not resubmit through to acceptance the remaining grievances returned to him by the grievance coordinator (OSP_2015_09_022, OSP_2017_05_091, and OSP_2017_08_039).

The only Grievance Appeal Form that Faunce submitted involved Grievance OSP_2017_08_039, and was filed after he had already filed a Tort Claims Notice. Kidwell Decl., Ex. 7 at 1. The filing of that document prompted the grievance coordinator to return Grievance OSP_2017_08_039 to Faunce a third time, citing OAR 291-109-0160, which requires the cessation of any grievance process on an issue subject to a notice of tort claim or state or federal lawsuit. *Id.*

Under Oregon's administrative scheme, an inmate is not permitted to bypass ODOC's grievance appeals process by filing a tort claims notice or a lawsuit in federal or state court. Oregon has chosen to disallow inmates from simultaneously pursuing a grievance and a lawsuit. OAR 291-109-0160(4) (if an inmate pursues the issue "through the state or federal courts, or has filed a notice of tort claim, the grievance process will cease and the grievance will be returned to the inmate"). However, the cessation of the administrative process does not excuse the PLRA's mandatory exhaustion requirement: "Because [plaintiff] did not comply with a critical procedural rule—completing the grievance procedure *before* filing a tort claim notice—he failed to properly exhaust his administrative remedies under § 1997e(a)." *Vega v. Bell*, 2015 WL 413796, at *5

(D. Or. Jan. 29, 2015) (emphasis in original); *see also Lovelady v. Beamer*, 2014 WL 7228870, at *3 (D. Or. Dec. 17, 2014) ("Prematurely ending the administrative process does not satisfy the PLRA exhaustion requirement, and does not demonstrate the unavailability of administrative relief."). Instead, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91 (footnote omitted).

Defendants have made an initial showing that Faunce did not exhaust an available administrative remedy on any of his grievances. With regard to each of his grievances, he either failed to resubmit grievances returned to him on procedural grounds, failed to file an appeal of the responses to his accepted grievances, or filed a tort claims notice thereby suspending the grievance process. As defendants have met their initial burden, Faunce must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

### C. Faunce's Response to Defendants' Assertion of Failure to Exhaust

In response to defendants' motion, Faunce raises several issues. However, Faunce fails to meet his burden of production and show that administrative remedies were effectively unavailable to him.

First, citing a difference in type size on two copies of the June 6, 2017 Grievance Response Form from C. Pries (compare Kidwell Decl., Ex. 5 at 1, ECF #41 with Pl.'s Resp. M. Summ. J. 7, ECF #46), Faunce speculates that there may be a "cover up" related to his grievance

appeals. Pl.'s Resp. M. Summ. J. 1, ECF #46. However, there is nothing in the record to support this speculation.

Second, Faunce notes that the Returned Grievance Form that ODOC uses when returning grievances contains the following statement:

> A grievance that has been returned to the inmate by the grievance coordinator for [a] procedural reason cannot be appealed. The inmate may elect to resubmit the grievance to the grievance coordinator within 14 calendar days from the date the grievance was sent back to the inmate if the procedural errors can be corrected.

Kidwell Decl., Ex. 4 at 1, ECF #41.

Faunce argues that this statement effectively renders defendants' motion "moot" because the "grievance coordinator was automatically denying grievances rewritten and submitted within 14 days of denial." Pl.'s Resp. M. Summ. J. 1, ECF #46. It is unclear what Faunce means by this argument. Nevertheless, as the appeal history on Faunce's own grievances demonstrate, a grievance may be "returned" to the inmate (sometimes multiple times), then resubmitted by the inmate and (assuming the procedural problem has been addressed and cured) become an "accepted" grievance, and proceed on to a disposition and an appeal. The boilerplate language in the letter returning grievances does not undermine the process nor does it render defendants' motion "moot."

Third, Faunce takes issue with another statement in the grievance return letter of September 17, 2015, which notes that a "separate grievance form must be filed for each individual that was DIRECTLY involved." *Id.* (citing Kidwell Decl., Ex. 4 at 1). Faunce asserts that he filed separate grievances against Sgt. Redding and Dr. Paulson, and purports to attach the two separate grievance forms. *Id*. at 1-2. However, only one of the two August 7,

2017 grievance forms proffered by Faunce is stamped as received by the grievance coordinator, and it relates to the conduct of both Sgt. Redding and Dr. Paulson. *Id*. at 12-13.

Fourth, Faunce asserts that he was unable to appeal the June 6, 2014 grievance because he was "sent to [disciplinary segregation] for disrespect to a nurse at 1:00 a.m." *Id*. at 2. The June 2014 grievance involved the care and medication that defendant Mann was providing Faunce in the infirmary. Kidwell Decl., ¶ 19, Ex. 3, ECF #41. OSP staff issued a grievance response on July 3, 2014, and there is no evidence in the record that Faunce attempted to file any appeal. Faunce wholly fails to provide any explanation or details concerning the timing or duration of his stay in disciplinary segregation. His one-line assertion of being in disciplinary segregation on undisclosed date(s) in 2014, without more, is insufficient to establish that the administrative appeal was effectively unavailable to him.

Finally, Faunce argues that, when he went to the legal library to look up the grievance review system for grievances involving medical staff and procedures, "Tab #109" was not available for inmate use. ECF #45 at 1. However, again, Faunce gives no details as to when he made this trip to the legal library and no details about how that lack of information prevented him from pursuing one or more of the grievances he filed between 2014 and 2017. In short, there is simply no evidence in the record that gives rise to the inference that ODOC's administrative remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile such that Faunce's obligation to exhaust is excused.

## III. Conclusion

Absent a showing that ODOC's administrative remedies were effectively unavailable, the PLRA flatly prohibits an inmate from bringing any action with respect to prison conditions under 42 USC § 1983 unless and until those remedies are exhausted. 42 USC § 1997e(a). Based on all

the evidence in the record, defendants have met their burden of establishing that Faunce failed to fully exhaust the administrative review process available to him on any of the grievances he filed relating to the claims he brings here.[2] Accordingly, summary judgment is granted in favor of defendants.

**ORDER**

Based on the record, defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF #39) is GRANTED.

DATED June 8, 2018.

/s/Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[2] The grievances that Faunce submitted relate primarily to Claim One, involving the lack of in-cell inhalers, the dispute over appropriate medications, and Faunce's request to see an outside cardiologist. Additionally, not every defendant in this case is named in Faunce's grievances.
   It is axiomatic that claims that have not been raised in an initial grievance have not been exhausted and that a grievance filed about the conduct of one person does not serve to exhaust the administrative process with respect to claims against other persons. However, this court need not further compare the claims brought in this lawsuit against Faunce's grievances. Even if Faunce's grievances encompassed all issues raised and all defendants named in this lawsuit, his failure to exhaust his grievances prevents him from proceeding further.